# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00666-CV

**Zurich American Insurance Company, Appellant**

**v.**

**Chantal McVey as Beneficiary of Troy McVey, Deceased, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 34,575, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## O P I N I O N

After her husband Troy McVey was killed in a motor vehicle accident while driving to Houston for a job-related training conference, appellee Chantal McVey, as Troy's beneficiary, sought workers' compensation survivor benefits from Troy's employer's insurance carrier, appellant Zurich American Insurance Company ("Zurich").[1] Zurich denied coverage, asserting that Troy's death was not compensable because he had not been acting within the course and scope of his employment at the time of his fatal accident. McVey sought review of Zurich's decision before the Division of Workers' Compensation, which concluded that Troy had, in fact, been acting within the course and scope of his employment and that his death was, therefore, compensable. Zurich sought judicial review of the Division's order in district court, where the parties, agreeing that

---

[1] Given their common surname, we will refer to the appellee as "McVey" but her late husband as "Troy" for clarity.

the controlling question of whether Troy had been acting within the course and scope of his employment turned solely on issues of law rather than disputed material facts, filed cross-motions for summary judgment. The district court granted McVey's motion and denied Zurich's. In a single issue on appeal, Zurich asserts the district court erred in its legal determination that Troy had been acting within the course and scope of his employment at the time of his accident. We will affirm the district court's judgment.

## BACKGROUND

The underlying facts are undisputed. At the time of his death, Troy was employed as an operations manager for TruGreen LandCare, a landscaping company, where he was charged with supervising numerous landscaping crews while they performed on-site services to clients in the Austin area. TruGreen had issued Troy a company-owned truck to use in performing his job responsibilities. Troy would begin a typical work day by driving the truck to an Austin TruGreen company office, where he and his crews would meet to discuss their plans for the day. After the meeting, Troy would typically spend most of his day traveling to various client sites in his truck to supervise crews and meet with clients. At the conclusion of his work day, Troy would typically depart whichever client site was his last and proceed directly home in his truck.

On the day of his fatal accident, Troy had been scheduled to attend a mandatory multi-day TruGreen leadership training conference in Houston. That morning, he left his home in Spicewood—a community located in western Travis County, along State Highway 71, approximately twenty miles west of Austin—and drove along Highway 71 toward Houston in his company-owned truck. Along the way, Troy had planned to pick up a coworker who had also been required to attend

2

the conference and who lived near Troy's planned route to Houston. Although the men were not required to carpool by TruGreen, strictly speaking, the company emphasized policies that its employees should be efficient when making company-funded travel and made employees subject to dismissal for repeated perceived abuses. The company also specifically prohibited employees from making company-funded travel by air unless that method of travel was cheaper for the company than driving. Additionally, when an employee had been provided with a TruGreen company vehicle, as had Troy, he would not be reimbursed for driving a private car on company business unless the company car were inoperable.

While en route to the coworker's house, Troy was involved in a motor-vehicle accident that killed him. Because of the relative location of the two men's houses, the route that Troy was taking at the time of the accident happened to overlap with the same route he would have taken had he been traveling to the Austin TruGreen office for his usual morning meeting with work crews.

After McVey sought workers' compensation survivor's benefits from Zurich, the carrier denied coverage, asserting that Troy's death was not compensable because Troy had merely been traveling to work that day and thus had not been acting within the course and scope of his employment. *See* Tex. Lab. Code Ann. § 401.011(10), (12) (West Supp. 2010). McVey sought review at the Division of Workers' Compensation, which found that Troy's death was compensable. Zurich filed a suit for de novo judicial review of the Division's decision in district court. *See id.* § 410.301 (West 2006) (de novo review on issues involving compensability). The parties filed cross-

3

motions for summary judgment on the issue of compensability. The district court granted McVey's motion and denied Zurich's. Zurich brought this appeal.

## ANALYSIS

In a single issue, Zurich asserts that the district court erred in granting McVey's summary-judgment motion and in denying its own because the undisputed facts established that, as a matter of law, Troy had been traveling to work and had not been acting within the course and scope of his employment. We review the district court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant is entitled to summary judgment if (1) there are no genuine issues of material fact, and (2) it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Nixon*, 690 S.W.2d at 548-49. Where, as here, the parties filed overlapping cross-motions for summary judgment, we review both motions and the summary-judgment evidence from both sides, decide all questions presented, and "render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

The parties agree that there are no genuine issues of material fact. They disagree, however, as to whether the undisputed facts demonstrate that Troy's death was a compensable injury as defined by the Workers' Compensation Act. A compensable injury is "an injury that arises out of and in the course and scope of employment for which compensation is payable under [subtitle A of the Workers' Compensation Act]." Tex. Lab. Code Ann. § 401.011(10). "Course and scope of employment" is defined, in relevant part, as

4

an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. The term does not include:

> (A)  transportation to and from the place of employment unless:
>
>> (i)  the transportation is furnished as a part of the contract of employment or is paid for by the employer;
>>
>> (ii)  the means of the transportation are under the control of the employer; or
>>
>> (iii)  the employee is directed in the employee's employment to proceed from one place to another place . . . .

*Id.* § 401.011(12).

The first portion of the "course and scope" definition—the general test that the employee's activity in question must (1) be the kind or character that has to do with and originates in the business of the employer, and (2) further the affairs of the employer—dates back to the original Workmen's Compensation Act of 1917. *See* Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, § 1, Part IV, § 1, 1917 Tex. Gen. Laws 269, 292 (formerly Tex. Rev. Civ. Stat. Ann. art. 8309, § 1 (West 1925)); *see also Leordeanu v. American Protection Ins. Co.*, __ S.W.3d. __, 2010 WL 4910133, at *1-3 (Tex. Dec. 3, 2010) (discussing history of course-and-scope test with respect to employee travel). Paragraph (A)—what has come to be known as the "coming and going" rule—codifies what originated as early judicial attempts to delineate circumstances when employee travel to and from work would come within the Act's "course and scope" definition. *See Leordeanu*, 2010 WL 4910133, at *3. These early decisions reasoned that employee travel to and from work

5

would further the affairs of the employer (the second component of the "course and scope" definition) by making employment possible, but determined that, as a general rule, such travel cannot usually be said to "originate in the business" (the first component) "because '[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers.'" *Id*. at *1 (quoting *Evans v. Illinois Employers Ins. of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990)). This concept evolved into a general exclusion of employee travel to and from work from the course and scope of employment. *Id.* at *1-2. At the same time, however, courts came to recognize three chief types or circumstances in which employee travel to and from work could potentially come within the course and scope of employment (and would be, in effect, exceptions to the exclusion for "coming and going" travel)—the three categories of employee travel ultimately codified in subparagraphs (i), (ii), and (iii). *Id.* at *2.[2]

---

[2] Labor Code section 401.011, subsection (12)'s definition of course and scope also contains an exclusion for what is termed "dual purpose" travel—travel that has both business and personal purposes. Paragraph (B) states that the term "course and scope employment" does not include

> (B)  travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:
>
> (i)  the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and
>
> (ii)  the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

Tex. Lab. Code Ann. § 401.011(12)(B) (West Supp. 2010). The parties agree that paragraph (B) is not applicable here as Troy was traveling from home to work and had no personal purpose for the trip. *See also Leordeanu v. American Protection Ins. Co.*, __ S.W.3d __, 2010 WL 4910133, at *6 (Tex. Dec. 3, 2010) (holding that subparagraphs (A) and (B) are mutually exclusive and thus any

6

In this case, it is undisputed that at the time of his fatal accident, Troy was traveling from his home to work, thereby potentially implicating the "coming and going" rule. *See* Tex. Lab. Code Ann. § 401.011(12)(A). However, it is also undisputed that Troy was traveling in a vehicle that his company provided and paid for, thus coming squarely within the exception in subparagraph (i) of the rule—"the transportation is furnished as a part of the contract of employment or is paid for by the employer." *See id.* § 401.011(12)(A)(i). Consequently, Troy's travel is excepted from the "coming and going" rule. *See Leordeanu*, 2010 WL 4910133, at *6 ("It is undisputed that Leordeanu was driving a car provided by her employer at the time of her accident and therefore excepted from the 'coming and going' rule by subpart (A)(i).").

McVey suggests that the compensability inquiry should end here. Having established that Troy's travel does not come within the "coming and going" rule, in McVey's view, it necessarily follows that the travel was within the course and scope of Troy's employment. McVey misunderstands the role of the "coming and going" rule within subsection 401.011(12)'s course-and-scope definition. The effect of satisfying subparagraph (i) was not, as McVey asserts, to establish that Troy's travel was within the course and scope of his employment, but merely to establish that such travel was not *excluded* from being within the course and scope of his employment solely by virtue of the fact that Troy was traveling to work. *See Rose v. Odiorne*, 795 S.W.2d 210, 213-14 (Tex. App.—Austin 1990, writ denied). But to affirmatively be within the course and scope of his employment, Troy's travel must also have satisfied the two elements of the general course-and-scope

---

travel between work and home, even if it is also for a dual purpose, must be analyzed exclusively under paragraph (A)).

definition. *See id.* ("Proof of [employer-paid travel] does not entitle appellant to compensation but only prevents his injury from being excluded from coverage simply because it was sustained while he was traveling to or from work. . . . [I]n order to prevail on the merits, appellant was required to prove . . . that the injury originated in the employer's business and was sustained during the furtherance of the employer's business.").

As previously noted, an employee's travel between home and work furthers the affairs of the employer (the second element of the course and scope definition) because it makes employment possible. *See Leordeanu*, 2010 WL 4910133, at *1. Thus, the propriety of summary judgment hinges on the definition's first element—whether the travel originated in the employer's business. *See* Tex. Lab. Code Ann. § 401.011(12). There is no bright-line rule for determining whether employee travel originated in the employer's business. Rather, each situation is necessarily dependent on the facts. As a general rule, an employee's travel originates in his employer's business if the travel was pursuant to the express or implied requirements of the employment contract. *Rose*, 795 S.W.2d at 214. This reflects the underlying policy goal of allocating to the employer and insurance carrier the risks inherent in an employee's job while leaving to the employee risks that are "shared by society as a whole and do not arise as a result of the work of the employer." *Evans*, 790 S.W.2d at 305. When the employer requires the employee to travel as part of its business—i.e., pursuant to the contract of employment—the risk of traveling stems from that business and properly can be said to arise as a result of the employer's business. *Rose*, 795 S.W.2d at 214.

Proof of origination can come in many forms. An employer's provision of transportation may be evidence that an employee's trip originated in his employer's business, with

8

the caveat that "the employer's [mere] gratuitous furnishing or paying transportation as an accommodation to the worker and not as an integral part of the employment contract . . . does not by itself render compensable an injury occurring during such transportation." *Id.* (citing *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963)). Depending on the circumstances, employer-provided transport that amounted to a "necessity from the employer's perspective and not just an accommodation" to the employee can be sufficient in itself to prove that the travel originated in the employer's business. *Id.* at 214.

Evidence that an employee was on a "special mission" for his employer is also probative of whether an employee's trip originated in his employer's business. The term special mission eludes precise definition but, in essence, is shorthand for trips made by an employee under the direction and for the benefit of the employer. *See Evans*, 790 S.W.2d at 304. "Special mission" travel, like travel made with an employer-provided vehicle, is among the judicially created exceptions to the "coming and going" rule that are codified in paragraph (A). *See* Tex. Lab. Code Ann. § 401.011(12)(A)(iii) ("coming and going" rule does not apply if "the employee is directed in the employee's employment to proceed from one place to another place").[3]

No singular fact is necessarily dispositive. Rather, we consider the nature of the employee's job, the circumstances of the travel, and any other relevant facts. *See, e.g.*, *Meyer*

---

[3] McVey argues that Troy was on a "special mission" for TruGreen when he was killed. Because we have determined that Troy's journey falls under the employer-provided transportation exception in subparagraph (A)(i) we need not decide whether (A)(iii) also applies. That is not to say, however, that we ignore evidence that tends to prove or disprove the existence of a special mission. Either way, as we explain above, such evidence may be probative of whether the employee's travel originated in the employer's business.

9

*v. Western Fire Ins. Co.*, 425 S.W.2d 628, 628-29 (Tex. 1968); *Texas Prop. & Cas. Ins. Co. v. Brooks*, 269 S.W.3d 645, 652 (Tex. App.—Austin 2008, no pet.). Additionally, in determining whether Troy's trip originated in TruGreen's business, we bear in mind that the provisions of the Workers' Compensation Act should be given a liberal construction to effect its purpose of compensating injured workers and their dependents. *See, e.g.*, *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999).

Here, McVey argues that the undisputed facts prove that Troy's travel on the date of the accident originated in his employer's business. She points to the following material facts:

- Troy normally works in Austin, yet at the time of the accident was on his way to a multi-day bi-annual leadership conference hosted by the corporate office in Houston, a city far outside the district in which he normally worked.

- Troy was required and directed to attend the conference by his supervisor.

- The Houston conference was focused on management techniques and was different from the local, regular safety meetings held in Austin for all staff.

- TruGreen provided Troy with a company-owned-and-branded truck and a gasoline card for his work, which involved heavy travel.

- Troy was driving the company-owned truck on his way to Houston when he was killed.

- Driving was the usual way an employee was required to get to the seminar unless he could prove that flying was cheaper than driving.

- Troy would not have been reimbursed for using a non-company vehicle unless the company vehicle had been inoperable.

- TruGreen provided its employees with general instructions regarding traveling efficiently. Employees were subject to dismissal for not traveling efficiently.

10

- At the time of the accident, Troy was on his way to his coworker's house because they were going to carpool to save the company money.

- Carpooling is consistent with TruGreen's efficiency mandate.

- The route Troy was traveling was the shortest route to Houston.

McVey argues that the facts show that: (1) part of TruGreen's business involves training its managers in leadership skills; (2) to train Troy, TruGreen ordered him to travel to Houston for a multi-day leadership conference and provided him a vehicle to do so; and (3) because TruGreen instructed Troy to go to Houston to enhance its business and because the means to do so were provided for him by the company, Troy's travel to Houston originated in the employer's business. We agree.

An employee is generally within the course and scope of his employment when the employer's business requires him to travel away from the employer's premises. *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 293-94 (Tex. 1965); *Aetna Cas. & Sur. Co. v. Orgon*, 721 S.W.2d 572, 574-75 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (collecting cases). In fact, relying on what has come to be known as the "continuous coverage" rule,[4] the supreme court and this Court have both held that the course and scope of employment in cases of overnight travel is broad, extending

---

[4] We have previously explained the "continuous coverage" rule as follows:

Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct depart[ure] on a personal errand is shown.

*Aetna Cas. & Sur. Co. v. Orgon*, 721 S.W.2d 572, 574-75 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (quoting 1A A. Larson, Workmen's Compensation Law § 25.00 (1985)); *see also Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 293 (Tex. 1965) (also citing Larson).

11

even beyond the actual act of travel itself to include injuries sustained during "down time." *See Shelton*, 389 S.W.2d at 293-94 (employee injured crossing street from hotel to restaurant was in course and scope); *Orgon*, 721 S.W.2d at 575 (employee injured by broken glass in hotel was in course and scope).

In *Shelton*, the worker was injured as he crossed the street from his motel to a restaurant during an overnight business trip to Dallas. 389 S.W.2d at 292. The supreme court noted that "[w]hile this is not a 'going to or returning from [home]' case, the problem here is essentially the same." *Id.* The court explained:

> Petitioner was on a trip of several days duration for his employer. Food and sleep were necessary if he was to perform the work for which he was hired, and under the terms of his employment contract he was permitted to stop and satisfy these physical needs and was paid the expenses incident thereto. He was not in Dallas by his own choice but was required to be there to do his job. By the very nature of the employment, moreover, the place and circumstances of his eating and sleeping were dictated to a large degree by contingencies inherent in the work.

*Id.* at 294. While neither *Shelton* nor *Orgon* addressed an injury sustained by an employee while traveling to or from home, the ultimate inquiry, as the supreme court suggested in *Shelton*, is "essentially the same"—whether an employee's injury bears the sort of nexus with his employment that distinguishes it as one whose risk should be borne by the employer and carrier, as opposed to risks borne by members of society at large. *See id.* at 293-94 ("An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business."). And, the circumstances of Troy's travel were analogous to those that the *Shelton* court

12

held to establish that the employee's activities had originated in his employer's business. Here, Troy was on his way to Houston to perform a task for his employer and, just as food and shelter were necessary for the worker in *Shelton*, so too was travel to Houston necessary if Troy was to perform his job as instructed. Like the worker in *Shelton*, Troy was not traveling to Houston by his own choice but was required to go there to do his job. Similarly, the nature of the TruGreen's constraints on Troy's means of travel meant that the circumstances of Troy's trip were dictated to a large degree by the requirements of his employer.

Zurich argues that Troy was merely on his way to an alternate work site when he was killed. It argues that "merely traveling to and from an alternative location, even though of benefit to an employer, is insufficient to create a special mission" and thus also insufficient to prove that an employee was in the course and scope of his employment. Zurich highlights the fact that Troy was first driving to pick up his coworker before heading to Houston and that he was traveling on the same road as he would use to get to work on a normal work day in Austin had that location been his destination.

As Zurich asserts, under certain circumstances, travel from home to an alternate work site—whether at a regular or somewhat altered start time—is not within the course and scope of employment. For example, in *Evans*, the supreme court held that railroad workers who had to travel to a different location for a regular morning safety meeting were not in the course and scope of their employment during their commute from home to the new location. 790 S.W.2d at 304. Noting that the employees were required to attend "regularly scheduled safety meetings" as part of their employment, the court held that travel to the meeting—even at a different, but nearby location

13

and at an earlier-than-usual time—was not a "special mission," but merely regular travel to work. *Id.* In so holding, the court noted that "[a]n employee 'can have more than one fixed place of employment and that fixed place of employment can change according to the nature of his work.'" *Id.* (quoting *Bissett v. Texas Employers Ins. Ass'n*, 704 S.W.2d 335, 338 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.)).

Zurich's comparison of the present case to *Evans* is unpersuasive. Troy and the railroad workers in *Evans* both usually began each work day with a meeting before traveling from the meeting location to various job sites. That, however, is where the similarities end. In *Evans*, the only change to the workers' daily routine was a slight alteration in the time and location of their regular safety meeting. In contrast, here Troy was traveling to an overnight conference in a relatively distant city, a significant departure from his daily routine. Troy's journey to Houston was not merely a trip from home to a nearby job site to begin a regular day of work, but instead was an atypical overnight trip to a relatively distant location outside his day-to-day work area.

Zurich emphasizes that Troy was en route to his coworker's house and that he was on the same road he would take to go to work on a normal day in Austin when he was killed, suggesting that those factors point to his journey being an everyday trip to work. The undisputed facts, however, show that his coworker had the same job as Troy and was required to attend the same conference in Houston. The evidence also shows that TruGreen encouraged its employees to travel as efficiently as possible. Under the circumstances, Troy's planned stop to pick up his coworker does not alter the business character of the trip. As to the route Troy was driving, the evidence shows that it was mere coincidence that his Austin office was on the same road as

14

the shortest route to Houston. Such a coincidence does not negate the trip's business purpose nor transform Troy's journey to Houston for an overnight conference into a drive to work on a typical workday.

Zurich cites *Texas General Indemnity Co. v. Bottom* for the proposition that an employee can have more than one work site and that those sites may change based on the nature of the employment. 365 S.W.2d 350 (Tex. 1963). As just discussed, this is a generally correct statement of the law, *see Evans*, 790 S.W.2d at 304, though inapplicable here. Furthermore, the facts in *Bottom* differ significantly from those here. The deceased worker in *Bottom* drove a truck for a convoy company delivering new vehicles from a manufacturing plant to various dealers. *Id.* at 351. Bottom owned his truck and leased it to the company. *Id.* On the day he was killed, Bottom decided to take the truck to be serviced and then was going to the factory to pick up a load. He was killed en route to work from the repair shop. In deciding that Bottom was not in the course and scope of his employment at the time of the accident, the supreme court concluded that because his trip to the repair shop was not required by his employer and because he was killed while on his way to his usual work site, Bottom's trip was not in the course and scope of his employment. *Id.* Thus, *Bottom* differs from the present case as Bottom was killed while driving to the factory, his usual place of business, to begin a normal work day of hauling cars, whereas Troy was driving from home to an overnight conference outside his normal work area.

Zurich asserts that *Tramel v. State Farm Fire and Casualty Co.* requires that a special mission originate at a work site—i.e., that a special mission can never begin from home. 830 S.W.2d 754, 755 (Tex. App.—For Worth 1992, writ denied). First, as we noted above, we

15

need not decide whether Troy was on a special mission for TruGreen. Thus, even assuming for the sake of argument that Zurich is correct and Troy was not on a special mission, such a conclusion is not dispositive. Moreover, *Tramel* does not stand for the proposition that every special mission must originate from a work site, only that, under the facts of that case, there was no special mission. *Id.* at 757. *Tramel*, like *Evans* but unlike the present case, involved a worker who was traveling from home to work according to her "regular and customary practice" with no deviation from her morning routine. *Id.*

Finally, Zurich argues that *Newsom v. Ballinger Independent School District* is instructive here. No. 03-07-00022-CV, 2007 WL 2066185 (Tex. App.—Austin July 17, 2007, no pet.) (mem. op.). Newsom, a basketball coach, was on her way to a Saturday practice when she was injured in a car accident. Newsom asserted that she was on a special mission for her employer at the time of the accident. In affirming summary judgment in favor of the school district, we noted that Newsom scheduled the practice of her own volition and was not directed by her employer to do so. *Id.* at *4. Further, we noted that the practice was a regularly scheduled event at Newsom's usual work location. *Id.* For the same reasons that we have already discussed, the facts of Newsom are not analogous to those here; thus, we do not find that case instructive.

## CONCLUSION

We hold that, as a matter of law, the undisputed facts establish that the "coming and going" rule did not apply to the travel in which Troy McVey was engaged at the time of his fatal accident, that this travel furthered the business of his employer, and that it originated in the business of his employer. Consequently, Troy was acting in the course and scope of his employment

16

at the time of the accident, and his death was compensable.  Accordingly, the district court did not err in granting summary judgment in favor of McVey and in denying Zurich's motion.  We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   March 30, 2011