

# NUMBER 13-25-00476-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**TEXAS MILITARY DEPARTMENT,**                                            **Appellant,**

**v.**

**NORMA URESTI-MARIN,**
**INDIVIDUALLY AND A/N/F**
**A.S., A MINOR,**                                                        **Appellee.**

---

### ON APPEAL FROM THE 139TH DISTRICT COURT
### OF HIDALGO COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Peña, West, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellant Texas Military Department (TMD) argues by one issue that the trial court improperly denied its plea to the jurisdiction based on sovereign immunity.[1] The parties' disagreement is focused on whether the actions of TMD's employee fall within the state-military forces exception to the motor-vehicle waiver of immunity under the Texas Tort Claims Act (TTCA), which we recently examined in *Texas Military Department v. Lopez*. 728 S.W.3d 731, 741–42 (Tex. App.—Corpus Christi–Edinburg 2025, pet. filed). We conclude, as we did in *Lopez*, that TMD's employee was engaged in an activity of the state military forces when the underlying accident happened. *See id.* Therefore, we reverse and render judgment dismissing the case for want of jurisdiction.

## I.     BACKGROUND

This accelerated interlocutory appeal arises from a motor vehicle accident that occurred on May 1, 2023. Appellee Norma Uresti-Marin was driving and stopped behind Mario Castillo at a stop sign at the exit of Sharyland Towne Crossing Plaza in Mission. The "Texas Peace Officer's Crash Report" notes Uresti-Marin was a safe distance behind Castillo. Castillo, who was driving a rental car that the Texas Army National Guard rented, reversed and hit the front of Uresti-Marin's vehicle, causing the collision at issue.

According to TMD, Castillo was only present in Hidalgo County because he was ordered by the TMD adjutant general to support Joint Task Force – Operation Lone Star (JTF-OLS). *See* TEX. GOV'T CODE ch. 437. Specifically, he was ordered to support the Texas Department of Public Safety South Texas Region from September 29, 2022, to

---

[1] "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). TMD is a state agency, and thus sovereign immunity is at issue.

August 31, 2023, and was considered on active duty throughout the entirety of this period. TMD further alleged that Castillo "was already on duty in uniform for his daily shift and en[ ]route to an observation location for his shift" as part of his duties supporting his post, and that the collision occurred while he was picking up food along the way. Castillo was a "roving unit," and his duties included driving to various points along the border. Castillo averred that picking up food was "an authorized part of [his] shift" and that he normally resided in San Juan.

Uresti-Marin filed suit on October 1, 2024, initially only serving Castillo and the rental car company.[2] Castillo filed a motion to dismiss pursuant to Texas Civil Practice and Remedies Code Section 101.106(f) because the suit could have been brought against TMD as the accident occurred while Castillo was working for TMD. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f). In response, Uresti-Marin amended her petition to remove her claims against Castillo directly and repleaded the negligence claims against TMD. Uresti-Marin also alleged there was a waiver of sovereign immunity because Castillo was operating a motor vehicle. *See id.* § 101.021(1)(A).

TMD filed its answer asserting a general denial and a plea to the jurisdiction arguing that TMD retained sovereign immunity. TMD then filed a separate plea to the jurisdiction and motion to dismiss arguing that, because Castillo was on active duty, the claim arose from the activities of the state military forces and TMD retained immunity. *See id.* § 101.054. Uresti-Marin responded that Castillo stopping to pick up food was not an activity of the state military forces and that the disagreement at the least constituted a material fact dispute requiring denial of the plea to the jurisdiction.

---

[2] Uresti-Marin later non-suited the rental car company.

3

The trial court denied TMD's plea by written order on September 15, 2025. This accelerated interlocutory appeal followed. *See id.* § 51.014(a)(8); TEX. R. APP. P. 28.1(a).

## II. ANALYSIS

Similar to *Lopez*, the only disagreement here is whether Castillo, the TMD serviceman, was performing an activity of the state military forces when he stopped to get food and was involved in a collision when exiting the stop. *See* 728 S.W.3d at 735.

### A. Standard of Review

Political subdivisions of the State such as TMD are generally immune from suit unless the Texas Legislature clearly and unambiguously waives this immunity. TEX. GOV'T CODE § 311.034; *City of Houston v. Hou. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018). Immunity from suit is properly asserted through a plea to the jurisdiction. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). "A plea to the jurisdiction challenges the existence of subject matter jurisdiction; that is, the court's power to decide the case." *Herrera v. Mata*, 702 S.W.3d 538, 541 (Tex. 2024) (citing *Suarez v. City of Texas City*, 465 S.W.3d 623, 632 (Tex. 2015)). "The trial court's ruling on a plea to the jurisdiction is a question of law we review de novo." *Id*. (citing *Hou. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016)). In de novo review, we give no deference to the trial court's decision. *See In re Est. of Slaughter*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana 2010, no pet.) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)).

Uresti-Marin bore the initial burden to plead facts affirmatively demonstrating the trial court's jurisdiction. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550

(Tex. 2019). TMD can challenge jurisdiction based either on the pleadings or on the existence of jurisdictional facts. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). When reviewing pleadings, we must "determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe pleadings liberally in favor of the pleader and a plaintiff "should be afforded the opportunity to amend" if the challenged jurisdictional defect may be cured with further factual allegations. *Tex. Tech. Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024). "[W]e will grant a plea to the jurisdiction without an opportunity to replead only if the pleadings affirmatively negate jurisdiction." *Jones*, 646 S.W.3d at 325. We cannot sustain a plea to the jurisdiction if the pleadings generate a fact question. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam); *see also City of Corpus Christi v. Muller*, No. 13-18-00443-CV, 2019 WL 2384162, at *1 (Tex. App.—Corpus Christi–Edinburg June 6, 2019, no pet.) (mem. op.).

However, "[w]hen a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Swanson*, 590 S.W.3d at 550 (quoting *Blue*, 34 S.W.3d at 555); *see Miranda*, 133 S.W.3d at 227. We must consider evidence even when the jurisdictional issue intertwines with the merits of the case. *Swanson*, 590 S.W.3d at 550. If jurisdictional facts are challenged, our standard of review mirrors that of a summary judgment. *Clark*, 544 S.W.3d at 770–71; *see* Tex. R. Civ. P. 166a(c). We take as true all evidence favorable to the nonmovant, indulge every reasonable inference and resolve doubts in the nonmovant's favor, and disregard contrary evidence if a reasonable

5

factfinder could do so. *Clark*, 544 S.W.3d at 771.

It is foundational that the "party suing the governmental entity bears the burden of affirmatively showing waiver of immunity." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Thus, a plaintiff can only survive a plea to the jurisdiction "by showing that the statute 'clearly and affirmatively waive[s] immunity' and by also 'negating any provisions that create exceptions to, and thus withdraw, that waiver.'" *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024) (alteration in original) (quoting *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023)); TEX. GOV'T CODE § 311.034.

## B.     Applicable Law

Generally, the TTCA waives governmental immunity for property damage and personal injury that "arises from the operation or use of a motor-driven vehicle" when "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). However, the waiver does not apply to "a claim arising from the activities of the state military forces when on active duty under the lawful orders of competent authority." *Id*. § 101.054. The state military forces include the Texas National Guard, Texas State Guard, and other military forces organized under state law. TEX. GOV'T CODE § 437.001(10), (14). The TMD is "the state agency charged with administrative activities in support of the Texas military forces." *Id.* § 437.001(13).

The Texas Government Code defines active duty as "the performance of military or emergency service for this state at the call of the governor or governor's designee" while it defines military duty as "any activity of a service member performing a duty under a lawful military order, including training." *Id*. § 437.001(7), (9). It further defines active

military service as "state active duty service, federally funded state active duty service, or federal active duty service." *Id*. § 431.001(1). Meanwhile, "[t]he adjutant general is the governing officer, policy maker, and head of [TMD]." *Id*. § 437.052.

"We review questions of statutory interpretation de novo." *Ferchichi v. Whataburger Rests. LLC*, 713 S.W.3d 330, 337 (Tex. 2025). Our objective when reviewing a statute "is to determine and give effect to the Legislature's intent." *Id*. (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). To do so, we will give words their plain meaning in context of the statute as a whole and will avoid constructions that lead to absurd results. *Id*. (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). Our guiding principle in interpreting statutory language in the context of immunity is to construe waivers of immunity narrowly. *See Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013).

## C. Discussion

We find ourselves faced with a remarkably similar fact pattern as that in our recent decision in *Lopez*. *See* 728 S.W.3d at 735. Once again, the record clearly shows that a TMD employee, Castillo, was on active duty upon lawful orders from the adjutant general. *See id.*; Tex. Gov't Code §§ 437.001(10), (14), 437.052; Tex. Civ. Prac. & Rem. Code § 101.054. Like the employee in *Lopez*, Castillo made a rest stop and caused an accident when exiting from the stop, though this time in reverse. *See Lopez*, 728 S.W.3d at 735–36.

Thus, we are faced with the same dispositive question: whether Castillo's stop is an "activity of the state military forces." *See id.* at 738 (quoting Tex. Civ. Prac. & Rem. Code § 101.054). Perhaps not surprisingly, the arguments asserted by the parties largely

7

mirror the arguments in *Lopez*, with TMD arguing Castillo was a "roving unit" and that stopping for food was within the scope of his activities for TMD, and Uresti-Marin arguing that Castillo was not engaged in a uniquely military activity and that applying TMD's arguments would swallow the waiver for any TMD employee. *See id.* at 738–41. Thus, it should be no shock that we follow the precedent we set in *Lopez* and hold that immunity is not waived. *See id.* at 741–42.

The Section 101.054 waiver exception is a broad one and applies to any claim arising from a servicemember's "activities" undertaken "when on active duty under the lawful orders of competent authority." TEX. CIV. PRAC. & REM. CODE § 101.054. While Uresti-Marin correctly notes that the TTCA usually waives for auto accidents caused by governmental employees, she must also demonstrate that the Section 101.054 waiver exception does not apply. *See id.* §§ 101.021(1)(A), 101.054; *Powell*, 704 S.W.3d at 447. Recognizing this, Uresti-Marin argued both in the trial court and on appeal that the waiver exception does not automatically apply when the driver is a service member on state active duty and that it only applies when the negligent conduct is uniquely military in nature.

This argument misunderstands the statute, caselaw, and TMD's arguments. We agree that the waiver exception does not apply to all service members on state active duty but that is not TMD's argument. Rather, TMD argues, as we held in *Lopez*, that the waiver exception applies because the negligence claim arose from Castillo's "activities" when on active duty. *See Lopez*, 728 S.W.3d at 739–40; TEX. CIV. PRAC. & REM. CODE § 101.054. The standard is not, as Uresti-Marin asserts, whether Castillo's activity and conduct was "uniquely military in nature," nor does the statute use the phrase "military

8

activity." *See* TEX. CIV. PRAC. & REM. CODE § 101.054. Recalling the same statutory analysis we conducted in *Lopez*, we note immunity is retained for the service member's "activities" while on active duty—not just the specific conduct ordered by competent authority. *See id.*; *Lopez*, 728 S.W.3d at 739.

There is no dispute Castillo was on active duty pursuant to orders issued by competent authority. Thus, immunity is retained here if Castillo's stop for food can be considered an "activit[y] of the state military forces." *See* TEX. CIV. PRAC. & REM. CODE § 101.054. Examining the same doctrines we reviewed in *Lopez*, there is no basis to decide differently here. As part of our comparison to the personal comfort doctrine, we find obtaining food while on patrol duties is merely incidental conduct and did not take Castillo outside of his "activities" as a TMD member. *See Lopez*, 728 S.W.3d at 740; *Berry Contracting, L.P., v. Mann*, 549 S.W.3d 314, 326 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE § 101.054. We also referred to the distinct departure doctrine and its direction that merely getting sustenance in the midst of one's duties is not a distinct departure. *See Lopez*, 728 S.W.3d at 740; *Zurich Am. Ins. v. McVey*, 339 S.W.3d 724, 731 n.4 (Tex. App.—Austin 2011, pet. denied).

Once more, we note these doctrines are not binding yet that the statute's term "activities" is arguably broader than the typical scope of employment analysis. *See* TEX. CIV. PRAC. & REM. CODE § 101.054. Thus, the "activities" in the statute might encompass acts even broader than these doctrines typically involve because TMD members are on duty twenty-four hours a day, and we should give greater deference to the executive as to what constitutes such "activities" due to the unique nature of these particular governmental employees. *See Van Dorn Preston v. M1 Support Servs., L.P.*, 642 S.W.3d

9

452, 457 (Tex. 2022) ("When the Executive Branch acts within its constitutional discretion, 'nothing can be more perfectly clear than that their acts are only politically examinable.'"). We also recall that Texas caselaw specifically notes those on call for twenty-four hours a day specifically need time to eat as Castillo was doing here. *See Lopez*, 728 S.W.3d at 741; *Emps.' Cas. Co. v. Bratcher*, 823 S.W.2d 719, 721 (Tex. App.—El Paso 1992, writ denied).

This query remains a fact-intensive case-by-case determination, and we agree with Uresti-Marin and affirm that merely being on duty under lawful orders does not render anything a serviceman might do immune from suit, as such interpretation would swallow the waiver of immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.054. However, this record does not create a factual dispute for a factfinder to resolve as Uresti-Marin argues in the alternative. The undisputed record demonstrates Castillo's stop was for food while on shift, and consistent with *Lopez*, we hold as a matter of law that this is part of the "activities of the state military forces." *See Lopez*, 728 S.W.3d at 740; TEX. CIV. PRAC. & REM. CODE § 101.054; *Miranda*, 133 S.W.3d at 227; *Swanson*, 590 S.W.3d at 550; *Clark*, 544 S.W.3d at 770–71.

In sum, we hold Uresti-Marin's claim arises from the activities of the state military forces because Castillo was on activity duty pursuant to the adjutant general's orders when he impacted Uresti-Marin's car. *See* TEX. CIV. PRAC. & REM. CODE § 101.054. Castillo was on shift as a "roving unit" during the accident and had merely stopped for food. Therefore, we conclude that, even when construing the facts in a light most favorable to Uresti-Marin, the TTCA's waiver of immunity does not apply to Castillo's negligence. *See id*. As we are bound to do, we construe the waiver of immunity narrowly

and affirm TMD's sole issue. *See Ngakoue*, 408 S.W.3d at 353.

### III. CONCLUSION

We reverse the trial court's denial of the plea to the jurisdiction and render judgment dismissing the case for want of jurisdiction.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
11th day of June, 2026.

11