

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00685-CV

**AMERICAN CASUALTY CO. OF READING, PENNSYLVANIA**,
Appellant

v.

Denise **BUSHMAN**, as Beneficiary of Clayton F. Bushman, Jr., Deceased,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 12-0823-CV
Honorable W.C. Kirkendall, Judge Presiding

#### OPINION ON MOTION FOR REHEARING

Opinion by:   Luz Elena D. Chapa, Justice

Sitting:   Sandee Bryan Marion, Chief Justice
  Rebeca C. Martinez, Justice
  Luz Elena D. Chapa, Justice

Delivered and Filed:  November 4, 2015

AFFIRMED

On September 16, 2015, American Casualty Company of Reading, Pennsylvania filed a motion for rehearing. We deny the motion for rehearing; however, we withdraw our opinion and judgment of August 19, 2015, and substitute those issued today.

American Casualty appeals the trial court's judgment. In one issue, American Casualty argues the trial court erred by denying its plea to the jurisdiction based on Denise Bushman's alleged failure to exhaust her administrative remedies. In another issue, American Casualty argues

the trial court erred by denying its motion for summary judgment against Denise, as beneficiary of Clayton F. Bushman, Jr., deceased, and by granting Denise's cross-motion for summary judgment. The competing motions for summary judgment concerned whether Clayton was acting in the course and scope of employment when he was fatally injured in a car accident. We affirm the trial court's judgment.

## BACKGROUND

Clayton Bushman was hired to work as a truck driver for Salem Holding Company (Salem). Ordinarily on each workday, Clayton drove his personal car from his home in Seguin to a Salem truck yard in the San Antonio area to pick up and drive a company truck. On a few occasions, Bushman worked as a dispatcher out of Salem's offices located in other cities. Salem would reimburse Clayton for his travel expenses when he traveled to work as a dispatcher. On Friday, January 28, 2011, Salem instructed Clayton to go to Elgin the following Monday as a dispatcher trainer and spend a week training a new dispatcher. Salem was to reimburse Clayton his mileage and expenses for travel to Elgin. Clayton was given the option of staying overnight during the week, and if he chose to do so, his lodging expenses would also be reimbursed by Salem. On Monday, January 31, 2011, Clayton, while driving his personal car, died in an accident on his way to Elgin.

Denise Bushman is Clayton's surviving spouse and legal beneficiary. Denise filed a claim with the Texas Worker's Compensation Division (WCD). She also filed a Notice of Representation in which she informed the WCD she was represented by legal counsel.

The WCD held a hearing, which Denise and her counsel attended. At the hearing, Denise testified Clayton worked for Salem for about ten years as a truck driver. She testified that on a few occasions prior to the accident, he worked as a dispatcher out of Salem's offices in Elgin and Ogden. When Clayton traveled in his personal car from home to pick up the company truck in San

Antonio, Salem never reimbursed him for mileage or paid for his travel time. Denise testified when Clayton would work as a dispatcher in another city, however, Salem reimbursed him for his mileage. Tommy Sides, Vice President and Safety Director for Salem Carriers, testified for American Casualty. He testified Salem is a truck leasing company that has "a carrier division that is a dedicated contract carrier for several different companies." Sides also testified Clayton was traveling to Elgin in his personal car and although the company was paying him for his mileage, the company was not paying him for his travel time to Elgin.

The hearing officer found Clayton was not in the course and scope of his employment when he was killed in the car accident. On October 6, 2011, the WCD sent a letter addressed to Denise and American Casualty notifying them of the hearing officer's decision. Although the letter was mailed to Denise, it was not mailed to her counsel.

On January 6, 2012, Denise's counsel filed an affidavit with the WCD in which she swore her office never received the WCD's decision letter. She explained she became aware that a decision had been made when she called to inquire about the status of the matter on January 4, 2012. Denise's counsel's affidavit further states she received a copy of the decision via facsimile on January 5, 2012. The WCD appeals panel denied the appeal because the hearing officer's decision had become final.

Denise filed an original petition in district court alleging Clayton was fatally injured while he was in the course and scope of his employment. She pled Clayton's employer asked him to perform a special mission by travelling to Elgin to work as a dispatcher. Denise further pled that because this was not a standard or regular part of Clayton's job duties, he was to be compensated for his travel time. The original petition avers she timely exhausted her administrative remedies. More specifically, Denise alleged her counsel did not receive the WCD hearing officer's decision until January 5, 2012, and an appeal of the decision was filed the following day.

American Casualty filed an answer and a plea to the jurisdiction. The plea to the jurisdiction alleged the WCD sent Denise the notice of the hearing officer's decision on October 6, 2011. It argued that pursuant to the WCD's mailbox rule, Denise's deadline to appeal was November 1, 2011. American Casualty attached no evidence to the plea to the jurisdiction. Denise filed a response and attached the notice of the hearing officer's decision. The notice reflects a copy of the decision was mailed on October 6, 2011 to Denise only and not to Denise's counsel. The trial court denied American Casualty's plea to the jurisdiction.

American Casualty filed a traditional and no-evidence motion for summary judgment. American Casualty argued there was no evidence Clayton's travel to Elgin was in the course and scope of employment and the evidence established his travel fell under the "coming and going" rule, which excluded his travel from the course and scope of employment. Denise filed a cross-motion for summary judgment in which she argued the "coming and going" rule did not apply because the "continuous coverage" or "traveling employee" doctrine applies. She also argued Salem paid for Clayton's transportation and Clayton was on a special mission.

The trial court denied American Casualty's motion for summary judgment and granted summary judgment in Denise's favor. American Casualty filed a timely notice of appeal.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

In its first issue, American Casualty argues the trial court erred by denying its plea to the jurisdiction. It argues a claimant has fifteen days from the date when the hearing officer's decision "is received" to appeal the decision. American Casualty contends Denise's appeal is untimely because she "received" the decision in October, and did not appeal until January, thereby depriving the trial court of jurisdiction to review the WCD hearing officer's decision.

### A. Standard of Review

We review the denial of a plea to the jurisdiction de novo. *City of San Antonio v. Alamo Aircraft Supply, Inc.*, 448 S.W.3d 507, 510 (Tex. App.—San Antonio 2014, no pet.). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (internal citation omitted). When a "plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Id.* at 227. In doing so, our review of the evidence mirrors summary judgment standards. *Id.* at 228.

### B. Discussion

The right to seek judicial review of a WCD hearing officer's decision is limited by statute. *See* TEX. LABOR CODE ANN. § 410.251 (West 2015); *Cervantes v. Tyson Foods, Inc.*, 130 S.W.3d 152, 157 (Tex. App.—El Paso 2003, pet. denied). "A decision of a hearing officer regarding benefits is final in the absence of a timely appeal by a party and is binding during the pendency of an appeal to the appeals panel." TEX. LABOR CODE ANN. § 410.169. "To appeal the decision of a hearing officer, a party shall file a written request for appeal with the appeals panel not later than the 15th day after the date on which the decision of the hearing officer is received from the division and shall on the same date serve a copy of the request for appeal on the other party." *Id.* § 410.202(a).

"A party's failure to exhaust the administrative remedies provided under Texas's workers' compensation scheme deprives the trial court of jurisdiction over that party's request for judicial review." *Combined Specialty Ins. Co. v. Deese*, 266 S.W.3d 653, 658 (Tex. App.—Dallas 2008, no pet.) (citing TEX. LAB. CODE ANN. § 410.251 (West 2006) and *Cont'l Cas. Co. v. Rivera*, 124

S.W.3d 705, 712 (Tex. App.—Austin 2003, pet. denied)). Filing an untimely appeal with the WCD appeals panel constitutes a failure to exhaust administrative remedies. *Frank v. Liberty Ins. Corp.*, 255 S.W.3d 314, 320 (Tex. App.—Austin 2008, pet. denied); *LeBlanc v. Everest Nat'l Ins. Co.*, 98 S.W.3d 786, 787–88 (Tex. App.—Corpus Christi 2003, no pet.).

The parties dispute whether the "date on which the decision of the hearing officer is received" is (a) the date on which the claimant *or* her counsel first receives the decision or (b) the date on which *both* the claimant *and* her counsel have received the decision. This issue was decided by one of our sister courts in *Frank v. Liberty Insurance Corporation*. 255 S.W.3d at 320–25. The *Frank* majority held the date of receipt is determined by the date a represented claimant's counsel receives the decision. 255 S.W.3d at 325. The *Frank* majority reasoned the WCD adopted a dual-notice rule to protect the rights of represented claimants that requires notice of the hearing officer's decision to be sent to both the claimant and the claimant's counsel. *Id.* It further reasoned the worker's compensation statute "must be construed liberally to achieve its purposes of compensating injured workers." *Id.* American Casualty argues the dissenting opinion in *Frank* is correct—the date on which either the claimant *or* her counsel received the decision is the "date on which the decision of the hearing officer is received." *Id.* at 328 (Waldrop, J., dissenting).

We agree with the *Frank* majority's reasoning and adopt its holding—the date the decision "is received" is the date on which a represented claimant's counsel receives the decision. *See id.* at 325–27. We hold the hearing officer's decision was deemed received on January 5, 2012, the date on which Denise's counsel received the WCD's decision letter. It is undisputed that Denise appealed the WCD hearing officer's decision the day after the letter was faxed to her counsel. Because the appeal was filed within fifteen days of the date Denise's counsel received the WCD's hearing officer's decision, Denise exhausted her administrative remedies. *See id.* at 320, 325–27.

Therefore, the trial court had jurisdiction and did not err by denying American Casualty's plea to the jurisdiction.

COURSE & SCOPE OF EMPLOYMENT

In its second issue, American Casualty argues the trial court erred by granting Denise's motion for summary judgment and denying its motion for summary judgment. American Casualty argues Clayton's travel did not originate in Salem's business, was not in furtherance of Salem's affairs, and fell under the "coming and going" exclusion from the course and scope of employment because Clayton was traveling to Salem's place of business in Elgin. American Casualty contends none of the exceptions to the "coming and going" exclusion are applicable. Denise responds Clayton was on business travel and thus the "coming and going" rule does not apply. She argues, alternatively, two exceptions apply to the "coming and going" rule: Salem paid for Clayton's transportation and Clayton was on a special mission.

## A. Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *accord Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. When, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the district court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient*

*Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## B. Applicable Law

Workers' compensation insurance compensates employees who sustain compensable injuries. *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 519 (Tex. 2007). "'Compensable injury' means an injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle." TEX. LABOR CODE ANN. § 401.011(10) (West 2015). "Course and scope of employment" is defined as:

> an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. *The term does not include*:
>
> (A) transportation to and from the place of employment *unless*:
>
> > (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;
> > (ii) the means of the transportation are under the control of the employer; or
> > (iii) the employee is directed in the employee's employment to proceed from one place to another place; or
>
> (B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee *unless*:
>
> > (i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and
> > (ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

*Id.* § 401.011(12) (emphasis added).[1]

---

[1] The parties agree that if an exclusion applies, it is subsection (A) and not (B).

Determining whether an activity is in the course and scope of employment involves a three-step analysis. The first step requires determining whether the activity (1) originates in the employer's work, business, trade, or profession and (2) furthers the employer's affairs. *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015). If these two elements are satisfied, then the activity is in the course and scope of employment unless one of section 401.011(12)'s exclusions applies. *See* TEX. LABOR CODE ANN. § 401.011(12)(A), (B); *SeaBright Ins. Co.*, 465 S.W.3d at 645. The second step is to determine whether one of the two exclusions applies: the "coming and going" exclusion or the "dual-purpose travel" exclusion. *See* TEX. LABOR CODE ANN. § 401.011(12)(A), (B). The two exclusions are mutually exclusive; that is, if the "coming and going" rule applies, then the "dual purpose travel" exclusion does not, and vice versa. *See Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 244–48 (Tex. 2010). If an exclusion applies, then the employee's activity is not in the course and scope of employment unless an exception to the exclusion applies. *See* TEX. LABOR CODE ANN. § 401.011(12)(A), (B). Therefore, the third step is to determine whether an exception to the exclusion applies. *See Leordeanu*, 330 S.W.3d at 244–46.

### 1. Furtherance & Origination

It is well-settled that travel to and from work satisfies the furtherance element. *See SeaBright Ins. Co.*, 465 S.W.3d at 644–45; *Leordeanu*, 330 S.W.3d at 242. It is undisputed that Clayton was traveling to Elgin for work at the time of the car accident. Therefore, Clayton's travel furthered Salem's affairs. *See SeaBright Ins. Co.*, 465 S.W.3d at 645; *Leordeanu*, 330 S.W.3d at 242.

Regarding the origination element, travel to and from work ordinarily does not originate in the employer's work, business, trade, or profession because the risks to which employees are exposed when traveling to and from work are shared by the traveling public and do not arise as a

result of the employer's work. *SeaBright Ins. Co.*, 465 S.W.3d at 642; *U.S. Fire Ins. Co. v. Eberstein*, 711 S.W.2d 355, 357 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Travel to and from work, however, may originate in the employer's work, business, trade, or profession if "the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *SeaBright Ins. Co.*, 465 S.W.3d at 642. The origination element is satisfied when the employee's travel was pursuant to an express or implied condition of the employee's contract. *Id.*

"Courts have generally employed a fact-intensive analysis to determine whether an employee's travel originated in the employer's business, focusing on the nature of the employee's job, the circumstances of the travel, and any other relevant facts." *Id.* at 642–43. "Proof of origination can come in many forms." *Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 730 (Tex. App.—Austin 2011, pet. denied). "Evidence that an employee was on a 'special mission' for his employer is . . . probative of whether an employee's trip originated in his employer's business." *Id.* Courts also consider whether the employer provided or paid for the transportation. *See SeaBright Ins. Co.*, 465 S.W.3d at 644; *McVey*, 339 S.W.3d at 730. "No singular fact is necessarily dispositive." *McVey*, 339 S.W.3d at 730.

American Casualty argues in its motion for rehearing that facts supporting exceptions to the "coming and going" exclusion (such as considerations of the "paid for" travel exception, the special-mission doctrine, and the "continuous coverage" doctrine) are irrelevant to the consideration of the origination element. It posits that, otherwise, the exceptions would render the origination requirement meaningless. But as the Supreme Court of Texas acknowledged in *SeaBright Insurance Co.*, the origination inquiry "is satisfied if the employee's travel was 'pursuant to express or implied conditions of his employment contract.'" 465 S.W.3d at 642 (quoting *Meyer v. W. Fire Ins. Co.*, 425 S.W.2d 628, 629 (Tex. 1968)). Citing cases that have

applied facts relating to the "special mission" doctrine, the "paid travel" exception, and the "continuous coverage" rule, the court further explained "[c]ourts have generally employed a fact-intensive analysis to determine whether an employee's travel originated in the employer's business, focusing on the nature of the employee's job, the circumstances of the travel, and any other relevant facts." *Id.* at 642–43 (citing *Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd) (continuous coverage); *McVey*, 339 S.W.3d at 730 (special mission and employer-provided transportation)). Cognizant that no single fact or doctrine is necessarily dispositive of the origination requirement, we consider the nature of Salem's business, Clayton's job, the circumstances of his travel, and other facts. *See SeaBright Ins. Co.*, 465 S.W.3d at 642–44; *McVey*, 339 S.W.3d at 730.

Salem has a carrier division of its company that requires dispatching truck drivers. According to Safety Director, Timmy Sides, Clayton "drove a truck for Salem" and was a "truck driver" who would on occasion serve as a dispatcher out of Salem's various offices. Salem instructed Clayton, who lived in Seguin, to report to Elgin and work there for a week to train a new dispatcher. And although he primarily worked as a Salem truck driver in San Antonio, he had on a few prior occasions worked as a dispatcher, but never as a dispatcher trainer. Salem did not ordinarily reimburse Clayton for travel from his home in Seguin to the truck yard in the San Antonio area, but Salem would reimburse Clayton for his travel expenses for traveling from Seguin to Elgin and his lodging expenses if he chose to stay overnight in Elgin. On the day of the accident, Clayton was traveling to Elgin and his travel was necessary if Clayton was to perform his job as his employer had instructed. Clayton was not traveling to Elgin by his own choice but was required to go and perform a job outside of his ordinary job duties and away from his ordinary job site. *See McVey*, 339 S.W.3d at 733 (reasoning that traveling away from ordinary job site to perform task

at an employer-hosted conference that was not part of ordinary job duties supported origination element).

Citing *Evans v. Illinois Employers Insurance of Wausau*, 790 S.W.2d 302 (Tex. 1990), American Casualty argues Clayton was not on a special mission because he was merely traveling to an alternate work site. American Casualty's comparison of this case to *Evans* is unpersuasive. In *Evans*, the only change to the employees' daily routine was a slight alteration in the time and location of their regular safety meeting. Here, Clayton was traveling to a week-long job assignment and Salem was going to pay for Clayton's mileage, lodging, and travel expenses and gave him the option of staying overnight in Elgin. Clayton's travel to Elgin was not merely a trip from home to a nearby job site to begin a regular workday, but rather was an atypical assignment in a different city.

We hold the evidence establishes Clayton's required work travel to Elgin to train a dispatcher originated in Salem's work, business, trade, or profession. *See McVey*, 339 S.W.3d at 730–34. Because the evidence establishes Clayton's travel satisfies both the furtherance and origination requirements, we next consider whether Clayton's travel is excluded from the course and scope of employment. *See* TEX. LABOR CODE ANN. § 401.011(12)(A), (B); *Leordeanu*, 330 S.W.3d at 244.

### *2. The "Coming and Going" Rule & 3. Paid Travel Exception*

American Casualty argues that even if Clayton's travel originated in Salem's business and furthered Salem's affairs, Clayton's travel is excluded by the "coming and going" rule because Clayton was traveling to work in his personal vehicle and reimbursement of his travel expenses was not a necessity from Salem's perspective. An employee's travel is not excluded by the coming and going rule if the employee's transportation "is paid for by the employer." TEX. LABOR CODE § 401.011(12)(A)(iii). Reimbursing an employee for expenses of traveling in a personal vehicle

satisfies this exception. *U.S. Fire Ins. Co. v. Brown*, 654 S.W.2d 566, 568 (Tex. App.—Waco 1983, no writ); *see Pena v. State Office of Risk Mgmt.*, No. 13-12-00712-CV, 2014 WL 4494509, at \*4 (Tex. App.—Corpus Christi Sept. 11, 2014, pet. denied) (mem. op.); *Tex. Prop. & Cas. Ins. Guar. Ass'n for Petrosurance Cas. Co. v. Brooks*, 269 S.W.3d 645, 653 (Tex. App.—Austin 2008, no pet.). Although, as American Casualty argues, the necessity of paying for an employee's travel from the employer's perspective is relevant to the origination element, the plain meaning of section 401.011(12)(A)(i), which must be liberally construed to effect the statute's purpose of compensating injured workers, is satisfied if the employee's transportation "is paid for by the employer." *See Seabright Ins. Co. v. Lopez*, 427 S.W.3d 442, 447 (Tex. App.—San Antonio 2014), *aff'd*, 465 S.W.3d 637 (Tex. 2015); *McVey*, 339 S.W.3d at 730-31; *Brown*, 654 S.W.2d at 568-69.

Here, it was undisputed that Salem was to pay for Clayton's travel on the morning he was in the car accident. Therefore, Clayton's travel is not excluded from the course and scope of employment by virtue of the "coming and going" rule. *See SeaBright Ins. Co.*, 465 S.W.3d at 645. Because Denise established the paid travel exception to the "coming and going" exclusion, the trial court properly denied American Casualty's motion for summary judgment and granted Denise's summary judgment.

## CONCLUSION

We affirm the trial court's denial of American Casualty's plea to the jurisdiction. Furthermore, the evidence establishes as a matter of law that Clayton was acting in the course and scope of his employment at the time of the car accident. Therefore, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice