COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
| --- | --- | --- |
| COUNTY OF EL PASO, | | No. 08-15-00079-CV |
| SELF-INSURED, | § | |
| | | Appeal from |
| Appellant, | § | |
| | | County Court at Law No. 6 |
| v. | § | |
| | | of El Paso County, Texas |
| MARY OROZCO, | § | |
| | | (TC # 2009-2091) |
| Appellee. | § | |

## **O P I N I O N**

This workers' compensation case requires us to determine whether summary judgment evidence conclusively established that a deputy sheriff was acting in the course and scope of his employment when he died in an automobile accident while traveling home from an "extra-duty" assignment in a marked patrol unit. For the reasons that follow, we reverse and render.

### FACTUAL SUMMARY

Ruben Orozco was a sergeant with the El Paso County Sheriff's Office. He was both a member of the patrol division and the team leader of the crisis negotiation team. Members of the patrol division are responsible for patrolling the county, enforcing traffic laws, and answering calls. Members of the crisis negotiation team are specifically trained to deal with hostage negotiation and are on-call twenty-four hours a day. On September 17, 2005, Ruben was working an extra-duty security assignment for the University of Texas at El Paso (UTEP). An

extra-duty assignment, as defined by Chapter 5.5 of the El Paso County Sheriff's Manual, includes secondary employment in which the actual or potential use of law enforcement powers is anticipated. Because Ruben was the team leader of the crisis negotiation team, he was permitted to drive a marked patrol vehicle to and from work and to wear his official uniform.

Around 1:30 a.m., when Ruben had completed his assignment at UTEP, he contacted dispatch to inform them that he was en route to his "1042", which is code for heading home. He was traveling eastbound on Interstate-10 when a vehicle traveling in the opposite direction lost a wheel which bounced over the center divider and struck Ruben's windshield, tragically resulting in his death.

Mary Orozco, as Ruben's wife and beneficiary, filed a claim for death benefits from El Paso County, a self-insured carrier, pursuant to the Texas Workers' Compensation Act. The County denied the claim and Mary presented the matter to the Texas Department of Insurance-Division of Workers' Compensation for a contested case hearing. The relevant issue concerned whether Ruben suffered a compensable injury resulting in his death. Chief Deputy Dolores Messick testified regarding Ruben's duties and responsibilities as both a member of the patrol division and as the leader of the crisis negotiation team. It was customary practice for an officer to contact dispatch to advise that he had completed his extra-duty assignment in the event the officer was needed for a later call. According to policy, while Ruben was driving home he was required to take any action necessary, and to respond to "anything that he observed on the way." The sheriff and his chief deputy agreed that Ruben was in the course and scope of his employment at the time of his accident because he was enforcing Texas traffic laws.

On cross-examination, Messick was asked whether the County compensated Ruben for the 20 or 30 minutes it took him to drive home and to explain the difference between on- and off-

duty status. Messick related that the drive home would not be recorded on his time sheet and when asked about the difference between on-duty and off-duty, the following exchange occurred:

> [Messick]: Well, on duty is when you're actually--it's a fine line. When--when you are, I guess--what--what you're getting at as on duty is when they go 10-8 and report that they are--are ready to take the call.
>
> [County Attorney]: What--what does 10-8 mean?
>
> [Messick]: That they're in service. They're in the car and ready to go.
>
> [County Attorney]: And what is off duty?
>
> [Messick]: That would be when they check out of the car.
>
> [County Attorney]: And that means they're no longer--
>
> [Messick]: Available for calls.
>
> [County Attorney]: Okay. And they're not getting paid for services rendered to El Paso County?
>
> [Messick]: Not after they--they check 10-7 out of the car.
>
> [County Attorney]: In fact, on the night of [Ruben's] accident, it was his night off, correct?
>
> [Messick]: Correct.

Messick explained that the visible presence of Ruben's uniform and marked patrol car on the Interstate amounted to enforcing traffic laws, thereby bringing him within the course and scope of his employment.

The hearing officer at the contested case hearing made the following findings of fact and conclusions of law relevant to this appeal:

> I find that [Ruben] was returning to his home at the time of the fatal accident. In so doing, he was on-duty, performing patrol functions in accordance with the policies of the Sheriff's Office. I find that [Ruben] was in the course and scope of his employment at the time of his death on September 17, 2005.

3

[Ruben] did suffer a compensable injury on September 17, 2005, resulting in his death.

The County appealed the hearing officer's decision to the Appeals Panel of the Texas Department of Insurance-Division of Workers' Compensation. The Appeals Panel determined that Ruben was not acting in furtherance of law enforcement at the moment of the accident. Ruben had completed his extra-duty assignment and was merely on his way home when the incident occurred. After evaluating the Sherriff Office's Manual and policies, the Appeals Panel determined that Ruben was not performing an "on duty work assignment." While the manual allowed for the use of the vehicle for official business, it did not specify that travel to and from a private, extra-duty assignment -- a secondary job so to speak -- would be within the course and scope of employment. The Appeals Panel read the restriction of the use of the vehicle for official business as a prohibition from using the vehicle for personal reasons. It reversed the hearing officer's determination that Ruben suffered a compensable injury.

Mary sought judicial review of the Appeals Panel's decision relating solely to whether Ruben sustained a compensable injury that resulted in his death. The parties filed competing motions for summary judgment and the trial court granted Mary's motion. On appeal, the County raises the sole issue of whether the trial court erred in finding that Ruben suffered a compensable injury resulting in his death while in the course and scope of his employment for the County.

## COURSE AND SCOPE OF EMPLOYMENT

### Standard of Review

We review the trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128

S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.3d 910, 911 (Tex. 1997). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Knott*, 128 S.W.3d at 215. Where, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). The reviewing court should render such judgment as the trial court should have rendered if it determines that the trial court erred. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Jones*, 745 S.W.2d at 900.

## Applicable Law

The Texas Workers' Compensation Act provides for employee compensation when injuries "arise[] out of and in the course and scope of employment for which compensation is payable under [the Act]." TEX.LAB.CODE ANN. § 401.011(10)(West 2015); *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 518 (Tex. 2007); *Biggs v. U.S. Fire Ins. Co.*, 611 S.W.2d 624, 627 (Tex. 1981)(essential element for recovery of workers' compensation benefits is that injury was sustained in course of employment).

An insurance carrier is liable for compensation for an employee's injury under the Act if "the injury arises out of and in the course and scope of employment." TEX.LAB.CODE ANN. § 406.031(a)(2). The provisions of the Act are liberally construed "to carry out the Legislature's

5

evident purpose of compensating injured workers and their dependents." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 652 (Tex. 2004).

"Course and scope of employment" means "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." TEX.LAB.CODE ANN. § 401.011(12). The term "course and scope of employment" does *not* include:

(A) transportation to and from the place of employment unless:
  i. the transportation is furnished as a part of the contract of employment or is paid for by the employer;
  ii. the means of the transportation are under the control of the employer; or
  iii. the employee is directed in the employee's employment to proceed from one place to another place; or
(B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:
  i. the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and
  ii. the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

*Id.* at § 401.011(12)(A), (B).

"The first step [in determining whether an activity is in the course and scope of employment] requires determining whether the activity (1) originates in the employer's work, business, trade, or profession and (2) furthers the employer's affairs." *Am. Cas. Co. of Reading, Pa. v. Bushman*, 480 S.W.3d 667, 673 (Tex.App.--San Antonio 2015, no pet.); *see also SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015); *Davis v. Tex. Mut. Ins. Co.*, 443 S.W.3d 260, 267 (Tex.App.--Dallas 2014, pet. denied)(for an employee's injury to be considered sustained in the course and scope of employment, it must (1) relate to or originate in the

employer's business, and (2) occur in the furtherance of the employer's business); *see also* TEX.LAB.CODE ANN. § 401.011(12). Both elements must be satisfied in order for an employee's injury to have occurred in the "course and scope of employment." *Deatherage v. Int'l Ins. Co.*, 615 S.W.2d 181, 182 (Tex. 1981); *Davis*, 443 S.W.3d at 267.

"If these two elements are satisfied, then the activity is in the course and scope of employment unless one of Section 401.011(12)'s exclusions applies." *Bushman*, 480 S.W.3d at 673; *see also* TEX.LAB.CODE ANN. § 401.011(12)(A), (B); *SeaBright Ins. Co.*, 465 S.W.3d at 645. Therefore, the second step is to determine whether one of the two exclusions of Section 401.011(12) applies: the "coming and going" exclusion of Section 401.011(12)(A) or the "dual-purpose travel" exclusion of Section 401.011(12)(B). *Bushman*, 480 S.W.3d at 673; *see also* TEX.LAB.CODE ANN. § 401.011(12)(A), (B); *SeaBright Ins. Co.*, 465 S.W.3d at 645 (even if employee is engaged in actions that originate in and further the employer's business at the time of injury, employee may not be acting in the course and scope of his employment if his actions fall within the statutory exclusion). "The two exclusions are mutually exclusive; that is, if the 'coming and going' rule [of section 401.011(12)(A)] applies, then the 'dual purpose travel' exclusion [of section 401.011(12)(B)] does not, and vice versa." *Bushman*, 480 S.W.3d at 673. "If an exclusion applies, then the employee's activity is not in the course and scope of employment unless an exception to the exclusion applies." *Id.* at 673-74; *see also* TEX.LAB.CODE ANN. § 401.011(12)(A), (B). Therefore, the third step is to determine whether an exception to the exclusion applies under Section 401.011(12)(A) or (B). *Bushman*, 480 S.W.3d at 674; *see also* TEX.LAB.CODE ANN. § 401.011(12)(A), (B).

It is well settled that travel to and from work satisfies the furtherance element. *See SeaBright Ins. Co.*, 465 S.W.3d at 644-45; *Leordeanu v. American Protection Ins. Co.*, 330

S.W.3d 239, 242 (Tex. 2010). Regarding the origination element, commuting to and from work ordinarily does not originate in the employer's work, business, trade, or profession because the risks to which employees are exposed when traveling to and from work are shared by the traveling public and do not arise as a result of the employer's work. *SeaBright Ins. Co.*, 465 S.W.3d at 642; *U.S. Fire Ins. Co. v. Eberstein*, 711 S.W.2d 355, 357 (Tex.App.--Dallas 1986, writ ref'd n.r.e.). Travel to and from work, however, may originate in the employer's work, business, trade, or profession if "the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *SeaBright Ins. Co.*, 465 S.W.3d at 642. The origination element is satisfied when the employee's travel was pursuant to an express or implied condition of the employee's contract. *Id.*

"Courts have generally employed a fact-intensive analysis to determine whether an employee's travel originated in the employer's business, focusing on the nature of the employee's job, the circumstances of the travel, and any other relevant facts." *Id.* at 642-43. "Proof of origination can come in many forms." *Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 730 (Tex.App.--Austin 2011, pet. denied). "Evidence that an employee was on a 'special mission' for his employer is . . . probative of whether an employee's trip originated in his employer's business." *Id.* Courts also consider whether the employer provided or paid for the transportation. *See SeaBright Ins. Co.*, 465 S.W.3d at 644; *McVey*, 339 S.W.3d at 730. "No singular fact is necessarily dispositive." *McVey*, 339 S.W.3d at 730.

With regard to employees in law enforcement, not every injury sustained by a police officer will necessarily occur within the course and scope of his employment. *Blackwell v. Harris County*, 909 S.W.2d 135, 139 (Tex.App--Houston [14th Dist.] 1995, writ denied). Like

8

other citizens, police officers may be injured in accidents unconnected with their service as law enforcement officers. *Id.* "However, because they retain their status as peace officers twenty-four hours a day, making the distinction between compensable and noncompensable injuries may be more difficult than cases involving other citizens." *Id.* Appellate courts employ a test "that turns on one basic inquiry: in what capacity was the officer acting at the time [of the injury]?" *Id.* We also note that this inquiry is generally a fact issue to be decided on a case-by-case basis. *Id.* at 140. Merely because an employee is on-call twenty-four hours a day does not mean that the employee is always acting within the scope of his employment. *City of Laredo v. Saenz*, No. 04-05-00188-CV, 2006 WL 286006, at *3 (Tex.App.--San Antonio Feb. 8, 2006, no pet.)(mem. op.). "[E]ven where an employee is on call 24 hours a day he must be engaged in or about the furtherance of the affairs or business of his employer to be in the scope of his employment." *Garcia v. City of Houston*, 799 S.W.2d 496, 499 (Tex.App.--El Paso 1990, writ denied).

<u>**Analysis**</u>

With these principles in mind, we now turn to the County's sole issue. Mary's position, and essentially the position adopted by the hearing officer, is that anytime a uniformed patrol officer is driving a marked patrol vehicle on public roads, he or she is in the course and scope of employment. At the time of the accident, Ruben was returning home from his private security assignment. UTEP paid him for his services and directed his duties. He had not been contacted by the police dispatcher to respond to a call or to engage in police duties, he was not responding to an emergency such as a citizen in need of assistance, and he was not engaged in a law enforcement duty of preserving the peace. We disagree that at the time of the accident, Ruben was performing a task of crime deterrence and enforcement of traffic laws simply because he was driving down the Interstate in a marked patrol vehicle. *See Mansfield v. C.F. Bent Tree*

9

*Apartment Ltd. Partnership*, 37 S.W.3d 145, 150-51 (Tex.App.--Austin 2001, no pet.)(police officer resident of apartments where he performed off-duty security patrols was acting in capacity as police officer by arresting trespasser); *Blackwell*, 909 S.W.2d at 139; *see, e.g., Brown v. Dillard's, Inc.*, 289 S.W.3d 340, 344 (Tex.App.--Eastland 2009, no pet.)(off-duty police officer working part-time for store as security was acting as on-duty officer when responding to crime information that suspect was engaged in burglary of vehicle in parking lot); *Saenz*, 2006 WL 286006, at *4-5 (off-duty officer driving city-issued truck not in scope of employment with city at time of accident where more than six hours had passed since officer completed his assignment, he was not responding to any calls at time of accident and had not observed criminal activity); *Gibbons*, 150 S.W.3d at 882 (because police officer is in a patrol car does not necessarily mean officer is on-duty; and actions of off-duty officer driving patrol car were in capacity as peace officer when at time of accident, deputy was using on-board computer for results of license plate check performed based on suspicion of a stolen vehicle).

We see nothing which would distinguish Ruben, at the moment of the accident, from any number of other commuters. At the time of the accident, Ruben was not actively responding or engaging in any type of law enforcement. Had he been in pursuit of the disabled vehicle, or any other vehicle for that matter, we may perceive the result differently.

Because we have determined that Ruben's activity was not in the course and scope of his employment, we need not consider the remaining two steps -- whether one of the two exclusions of Section 401.011(12) applies or whether an exception to the exclusion applies under Section 401.011(12)(A) or (B). *See* TEX.LAB.CODE ANN. § 401.011(12)(A), (B). We sustain the County's sole issue and reverse and render judgment in favor of El Paso County.

10

December 21, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.