# IN THE SUPREME COURT OF TEXAS

═══════════

No. 17-0381

═══════════

MARY OROZCO , PETITIONER,

v.

COUNTY OF EL PASO, SELF-INSURED, RESPONDENT

══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

══════════════════════════════════════════

**Argued November 5, 2019**

JUSTICE DEVINE delivered the opinion of the Court.

The issue in this workers' compensation appeal is whether a deputy sheriff, who died in a vehicular accident while driving his assigned patrol car, was in the course and scope of his employment. The trial court rendered summary judgment for the deputy's widow, concluding that the deputy was in the course and scope of his duties with the county at the time of his death. The court of appeals disagreed. It concluded that the deputy was not in the course and scope because the accident occurred during his travel home from an extra-duty assignment with a private employer. 545 S.W.3d 638, 644-45 (Tex. App.—El Paso 2016). The appellate court accordingly reversed and rendered judgment for the county. Because the summary judgment evidence established that the deputy was operating the marked patrol car with the county's permission and under its authority at

the time of his death, we conclude the deputy was engaged in a law-enforcement activity within the course and scope of his employment. The court of appeals' judgment is accordingly reversed and judgment rendered for the widow.

**I**

Ruben Orozco died in his patrol car on September 17, 2005, while driving on the I-10 expressway that runs through El Paso. He was killed instantly when a wheel from another vehicle came loose and crashed through his patrol car's windshield. At the time of his death, Orozco was a sergeant with the El Paso County Sheriff's Department, assigned to the patrol division, and a leader on the department's crisis negotiation team. The sheriff's department assigned Sergeant Orozco a marked patrol car as a take-home unit. Orozco was authorized to keep his patrol car at home because of his rank in the patrol division and his work with the crisis team.

On the night of his death, Sergeant Orozco was not scheduled to work for the sheriff's department. He instead worked an extra-duty assignment at a University of Texas El Paso (UTEP) football game. "Extra Duty Employment" is defined in the El Paso County Sheriff's Policy Manual as "secondary employment in which the actual or potential use of law enforcement powers is anticipated." The sheriff's policy manual also defines and distinguishes "Outside Employment" as another type of "secondary employment in which the use of law enforcement powers is not anticipated." Both types of secondary employment must be approved by the sheriff through the chain of command. Employees working extra-duty employment are admonished that they must "operate under all applicable policies and procedures of the Department."

Department vehicles may not be used for off-duty, outside employment. They may be used for extra-duty employment, but the employee must obtain approval from the division commander. The sheriff's policy manual explains that department vehicles may be used only "with the permission of a supervisor and [then] only for official business." Because the work at UTEP was extra-duty employment that might entail the use of an officer's law-enforcement powers, Sergeant Orozco wore his uniform, badge, and gun to the football game, and he drove there in his assigned patrol car. After completing his work at the UTEP football game, Sergeant Orozco also used the patrol car for his return trip home. The freak accident that took his life occurred en route.

After Sergeant Orozco's death, his surviving spouse and beneficiary, Mary Orozco, filed a claim for workers' compensation benefits with the County of El Paso, a self insurer under the Texas Workers' Compensation Act. *See generally* TEX. LAB. CODE §§ 407.001-.133 (regulating self-insurers). The county denied the claim, believing that Orozco was not in the course and scope of his employment at the time of the accident. Sergeant Orozco's widow sought to resolve her claim in a contested-case hearing before an administrative law judge. *See id*. §§ 410.151-.169 (governing contested-case hearings). The hearing officer in that proceeding ruled in the widow's favor, concluding that her husband's death was a compensable injury that occurred in the course and scope of his employment. The county appealed. *See id*. §§ 410.201-.209 (governing administrative appeals).

A three-member appeals panel reviewed the county's administrative appeal. The panel concluded that Sergeant Orozco was not in the course and scope of his employment at the time of

his death and that his widow was therefore not entitled to benefits. It accordingly reversed the hearing officer's decision.

Having exhausted the administrative process, the widow next sought judicial review of the appeals panel's decision denying her benefits. *See id*. §§ 410.251-.308 (governing judicial review). The parties filed competing motions for summary judgment in the trial court. Both motions focused on whether Sergeant Orozco's travel at the time of his death was in the course and scope of his duties with the sheriff's department, and both incorporated the record from the contested-case hearing as support for their respective views.

The trial court granted the widow's motion, denied the county's, and rendered judgment in the widow's favor. The county appealed, urging again that Sergeant Orozco's death was not compensable because his activity at the time of death (driving home after completing his extra-duty employment at UTEP) was not in the course and scope of his job with the sheriff's department. Agreeing with the county, the court of appeals reversed, rendering judgment that the widow take nothing. 545 S.W.3d at 645.

The judicial decisions in this case thus replicate the administrative rulings that preceded them. The trial court, agreeing with the hearing officer, has concluded that Sergeant Orozco was performing the duties of an El Paso County Deputy Sheriff at the time of his death. The court of appeals, agreeing with the administrative appeals panel, has concluded that Orozco was off-duty and serving his own private interests rather than those of the El Paso County Sheriff's Department at the time of the accident. Since the hearing officer's decision, each successive appeal has reversed the

4

decision that preceded it. With that daunting history in mind, we turn to the arguments in this, the fourth and final appeal in the matter.

## II

The widow argues that the patrol car, operated by her husband, was in the service of the county's official business and that her husband was similarly performing law-enforcement duties for the sheriff's department and county during his travel home from the extra-duty assignment. She submits the summary judgment evidence unequivocally establishes that her husband was therefore in the course and scope of his official duties at the time of his death.[1] The county responds that, at the time of the accident, Orozco was off duty, not being paid by the county, and not engaged in any specific law-enforcement activity. The county submits that Orozco was merely returning to his home from extra-duty employment, concluding that he remained off duty because that travel was outside the course and scope of his employment.[2]

We have recently observed that "whether an officer is on or off duty does not determine whether the officer's conduct falls within the scope of his employment." *Garza v. Harrison*, 574 S.W.3d 389, 403 (Tex. 2019). "Peace officers are . . . relatively unique among governmental employees as they may be required to spring into action at a moment's notice, even while off duty." *Id*. Because a peace officer is always a peace officer, even during off-duty hours, the capacity in which an officer is acting can be nebulous when the officer has undertaken private employment

---

[1] The Combined Law Enforcement Associations of Texas (CLEAT) has filed a brief as Amicus Curiae in support of the widow.

[2] The Texas Association of Counties, joined by the Texas Association of Counties Risk Management Pool, the Texas Municipal League, the Texas Municipal League Intergovernmental Risk Pool, the Texas Conference of Urban Counties, and the Texas Association of City Attorneys, have filed a brief as Amici Curiae in support of the county.

during off-duty hours. *Id*. But here we are not strictly concerned with Sergeant Orozco's activities or conduct at the UTEP football game. His employment there had ended before the accident.[3] It is Sergeant Orozco's use of his patrol car for travel from that approved employment to his home that is at issue. The dispute here is whether that activity or use was in the course and scope of his employment.

Under the Workers' Compensation Act, "course and scope of employment" means "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." TEX. LAB. CODE § 401.011(12). There are two components to the statutory definition. An activity within the "course and scope of employment" must (1) relate to and originate in the employer's business and (2) further the employer's affairs. *State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 276 (Tex. 2017).

As a general rule, travel to and from work does not originate in the employer's business and, in some instances, is expressly excluded from the course and scope of employment by statute. *See* TEX. LAB. CODE § 401.011(12)(A) (excluding "transportation to and from the place of employment" with exceptions). As we have explained, "travel to and from work makes employment possible and thus furthers the employer's business, satisfying the second component of the definition, but such travel cannot ordinarily be said to originate in the business, the requirement of the first component, because '[t]he risks to which employees are exposed while traveling to and from work are shared

---

[3] Sergeant Orozco's activities during his extra-duty employment did not cause his death. We thus do not decide here whether, or to what extent, a peace officer's workers' compensation benefits might apply to an injury or death occurring during an officer's extra-duty employment.

6

by society as a whole and do not arise as a result of the work of employers.'" *Leordeanu v. Am. Protection Ins. Co.*, 330 S.W.3d 239, 242 (Tex. 2010) (quoting *Evans v. Ill. Emp'rs Ins. of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990)(alteration in original)). Even so, exceptions may exist for travel that is an integral or required part of the employee's work. *Seabright Ins. Co. v. Lopez*, 465 S.W.3d 637, 644-45 (Tex. 2015). The general exclusion of travel to and from work has its origins in the common law, but the Legislature has since codified it as part of the act's course-and-scope definition. *See* Tex. Lab. Code § 401.011(12)(A)(i-iii) (excluding "transportation to and from the place of employment" with exceptions); *see also Leordeanu*, 330 S.W.3d at 241-43 (discussing the history of employee travel and the course-and-scope inquiry).

Although the court of appeals did not purport to apply this exclusion from course and scope to Orozco's trip home, it nevertheless alluded to its underlying rationale for support, stating that Orozco was merely "returning home from his private security assignment" and "at the moment of the accident [indistinguishable] from any number of other commuters." 545 S.W.3d at 644-45. That activity, the court reasoned, did not relate to or originate in the work of the El Paso County Sheriff's Department or further its affairs, and thus "was not in the course and scope of his employment." *Id.* at 645. The court suggested that Sergeant Orozco's travel might have been in the course and scope of his employment had he engaged in a separate law-enforcement activity during the trip, such as stopping to render aid or pursuing a traffic violation. *See id.* (concluding that Orozco was not in the course and scope of his job as a peace officer because he "was not actively responding or engaging in any type of law enforcement" during travel). But because "[h]e had not been contacted by the police dispatcher to respond to a call or to engage in police duties, [] was not responding to an

7

emergency such as a citizen in need of assistance, and [] was not engaged in a law enforcement duty of preserving the peace," he was, in the court's view, not in the course and scope of his employment at the time of the accident. *Id*. at 644.

The widow, of course, disagrees. She argues that the summary judgment evidence conclusively establishes that her husband's operation of his patrol car at the time of the accident was in the course and scope of his duties as an El Paso County Deputy Sheriff. The widow relies on the record from the contested-case hearing. Both she and the county incorporated that record into their competing motions for summary judgment. The focus of the contested-case hearing was, as here, on Sergeant Orozco's use of his marked patrol car during off-duty hours, his employer's policies and procedures regarding that use, and their relationship to his travel home on the night of the accident.

Dolores Messick testified at the hearing. She is the sheriff's chief deputy, and, as her title implies, the sheriff's second in command. The sheriff did not testify, having passed away several months before the contested-case hearing. The record nevertheless includes documentary evidence reflecting the sheriff's view of Sergeant Orozco's use of his assigned patrol car on the night of the accident. According to the sheriff's affidavit and other contemporary correspondence, Sergeant Orozco was performing a law-enforcement function as an El Paso County sheriff's deputy at the time of his accidental death.

The chief deputy, who testified in the sheriff's stead, explained departmental policies and procedures concerning patrol cars and the use of take-home units. She confirmed that the sheriff's department provided Sergeant Orozco a marked patrol car and authorized him to take the unit home at work's end. She also authenticated the sheriff's policy manual, which was included in the record.

8

Chapter 9.1 of that manual states the department's operational view that department vehicles are not for personal use but rather "are provided for the enforcement of laws, responding to emergencies . . . the ultimate protection of all citizens, officers and property . . . [and] to support functions of the Department." Department policy thus limited the use of department vehicles to official business, and official business could include extra-duty employment, if approved by the division commander. Sergeant Orozco's request to use his patrol car in connection with the UTEP job was approved by the division commander.

Chief Deputy Messick further explained Sergeant Orozco's duties as a member of the patrol division. Those duties included patrolling the county, enforcing traffic laws, answering calls, and presenting a physical law-enforcement presence on the streets. She also testified about the use of patrol cars within that division. The chief deputy explained that department policy required officers to notify dispatch "10-8" before commencing operation of a vehicle, meaning that the officer was clear of other assignments, back in the patrol car, and available for calls. She further explained that an officer with a take-home unit was also required to notify dispatch on arriving home that the car and deputy were no longer in service or available to take calls. The chief deputy testified that the policy applied equally to extra-duty assignments and that Sergeant Orozco would have notified dispatch that he was back in his unit after completing the UTEP assignment. When asked by the county's lawyer whether Orozco had in fact followed this policy, the chief deputy reported that he had, referring to a conversation with the chief dispatcher that Orozco checked in through the patrol unit's laptop before leaving UTEP. The chief deputy also agreed with the sheriff's assessment that Sergeant Orozco was in the course and scope of his employment with the department during the

9

authorized operation of his marked patrol car between UTEP and his home and that his accidental death during that trip was therefore in the line of duty. The policy manual defines a line-of-duty death as "the death of an active duty sworn officer by felonious or accidental means during the course of performing a law enforcement function while on- or off-duty."

Contrary to the assessment of the sheriff and chief deputy, the county contends that Sergeant Orozco's operation of his patrol car on the night of the accident was not a law-enforcement function and thus not an activity within the course and scope of his employment. Instead, the county maintains that Orozco's use of his patrol car to commute to and from the extra-duty employment was a purely personal activity. As such, the county concludes it neither originated in nor furthered the work of the sheriff's department.

The court of appeals agreed with the county. *See* 545 S.W.3d at 645. We do not. The county's argument is premised on the notion that either the sheriff violated his own policy manual by authorizing Orozco's personal use of the patrol vehicle on the night in question or that the sheriff properly authorized the vehicle's use for official business that night, but not its operator. The summary judgment evidence dispels both notions.

The summary judgment record establishes that Sergeant Orozco's patrol car, although authorized as a take-home unit, was not for his personal use. Per department policy, it could only be used for official business. Travel to and from an extra-duty assignment, however, could qualify as an official use of the patrol car, if approved. Here, it was approved for that purpose. Orozco's operation of his patrol car at the time of his death was thus an authorized and official use of the government vehicle. Orozco may not have been on duty at the time of the accident, at least in the

sense that the county was paying for his time, but the county was paying for Orozco's patrol car and directing its use. The question is whether that activity—Orozco's authorized operation of a marked patrol car on the roads of El Paso County—satisfies the statute's basic test for course and scope. We conclude that it does.

The statutory test asks whether the activity producing injury relates to, originates in, and furthers the employer's business affairs. TEX. LAB. CODE § 401.011(12). The operation of a marked patrol car on the public streets is an activity that clearly relates to and originates in the work or profession of the El Paso County Sheriff's Department. Patrolling El Paso's roads is a significant part of the department's work. Moreover, having uniformed deputies in marked patrol cars on El Paso streets furthers the work of the sheriff in preserving the peace and in responding to citizens in need of assistance. We conclude that the authorized operation of a marked patrol car on the public streets by a uniformed deputy sheriff engaged in what the sheriff's department considers its official business is an activity within the course and scope of the deputy's employment.

## III

Even though we have concluded that Orozco's travel originated in his employer's work and furthered its affairs under the statute's basic definition of course and scope, the county maintains that Orozco's travel must still be analyzed under the statute's two exclusions. *See* TEX. LAB. CODE § 401.011(12)(A), (B) (excluding certain travel-related activities). These exclusions pertain specifically to travel-related injuries and further circumscribe the course-and-scope inquiry. The court of appeals found the application of these exclusions unnecessary in accordance with its view of the patrol car as a purely personal conveyance in this instance. 545 S.W.3d at 645. Although we

11

disagree with that view, we recognize that the court of appeals' judgment in the county's favor may nevertheless be correct if either exclusion were to apply.

The statutory definition of the term "course and scope of employment" excludes two types of travel. First, the statute generally excludes "transportation to and from the place of employment." *See* TEX. LAB. CODE § 401.011(12)(A). This exclusion, commonly referred to as the coming-and-going rule, is subject to several exceptions. *Id*. § 401.011(12)(A)(i-iii); *see also Janak v. Tex. Emp'rs' Ins. Ass'n*, 381 S.W.2d 176, 178 (Tex. 1964) (noting the exclusion's colloquial name). Second, employee travel that is for both personal and business reasons is excluded from course and scope, absent certain conditions. *See id*. § 401.011(12)(B)(i-ii). This type of dual-purpose travel is covered when the employee's travel would have been made notwithstanding the employee's personal reasons and would not have been made without a business reason. *See Leordeanu*, 330 S.W.3d at 243 ("[A]n employee traveling for both business and personal purposes is in the course and scope of employment only if the business purpose is both a necessary and sufficient cause for the travel."). The dual-purpose rule developed under common law "for the distinct situation in which the employee is traveling between work and a place other than home." *Id*. at 245. The county has argued both the coming-and-going rule and the dual-purpose rule, albeit in different courts.

In the trial court, the county argued the coming-and-going rule in its motion for summary judgment and in its response to the widow's competing motion. Changing course, the county now contends that the dual-purpose rule excludes the travel at issue from coverage, arguing further that the coming-and-going exclusion does not apply after all. As noted, the court of appeals did not expressly apply either exclusion, although it did rely in part on a rationale associated with the

12

coming-and-going rule to support its course-and-scope analysis. 545 S.W.3d at 645 ("We see nothing which would distinguish Ruben [Orozco], at the moment of the accident, from any number of other commuters."). The coming-and-going rule assumes that traveling on public roads is a risk shared by members of the general public, and not one that is ordinarily incidental to employment. *Evans v. Ill. Emp'rs Ins. of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990). Exceptions exist, however. For example, transportation to and from employment is not necessarily excluded from course and scope when the employer pays for the transportation or exercises control over it. TEX. LAB. CODE § 401.011(12)(A)(i-ii). Both of these exceptions to the coming-and-going exclusion apply here: the county provided Sergeant Orozco's patrol car and controlled its use. The coming-and-going rule thus does not exclude Sergeant Orozco's travel from course and scope if, as we have determined, the travel otherwise originated in and furthered his employer's affairs.

The county presently argues that the dual-purpose rule applies to Sergeant Orozco's travel here and excludes it from being in the course and scope of his employment. The dual-purpose rule and coming-and-going rule are distinct exclusions. We have held them to be mutually exclusive, concluding that travel to and from work is governed solely by the coming-and-going rule, while all other travel is subject to the dual-purpose rule. *See Leordeanu*, 330 S.W.3d at 248. Thus, if the coming-and-going rule applies to the travel at issue, the dual-purpose rule does not. *Id*.

The county's present argument, as distinguished from its contention in the trial court, is that the coming-and-going rule does not apply because Sergeant Orozco's travel was not between his home and his place of employment with the county but rather between his home and outside employment. We disagree that the travel here concerns "outside" employment.

13

Chapter 5.5 of the sheriff's policy manual distinguishes between "outside" and "extra-duty" employment. Outside employment "is secondary employment in which the use of law enforcement powers is not anticipated." Extra-duty employment, on the other hand, anticipates the use of actual or potential law-enforcement powers, and employees working extra-duty assignments "operate under all applicable policies and procedures of the Department." Approved extra-duty employment involves law enforcement; approved outside employment does not. Department vehicles can be used for extra-duty employment, but their use is "not [] allowed for any off-duty employment." Nor would a deputy sheriff be allowed to wear his uniform, gun, and badge for outside employment. The sheriff's policy manual thus treats extra-duty employment as a continuation of the law-enforcement duties exercised by the department's deputies during their normal work hours for the county. Sergeant Orozco may have been paid by UTEP for his work during the football game, but the focus of our analysis is his return trip home from the extra-duty employment, which was no different from similar travel at the end of a day of work for the county. Departmental policy required that he maintain contact with the department by checking in with dispatch on entering or exiting his patrol car. And when traveling home at the end of his tour, Sergeant Orozco was required to inform dispatch of his arrival there and advise that he and the vehicle were no longer in service.[4] In this instance, however, Sergeant Orozco did not make it home.

The county argues that no evidence exists that Orozco actually followed this procedure on the night in question, suggesting that this fact's existence should control our decision about course

---

[4] These considerations regarding Sergeant Orozco's return trip are unique to the law enforcement context. Moreover, we express no view on whether they have a role to play in analyzing who his employer would be for workers' compensation purposes had he been injured during his extra-duty employment. *See* n.3, *supra*.

and scope. We doubt it does, but of more significance here is that this fact was not in dispute below. The widow asserted it as an undisputed fact that her husband "contacted the Sheriff's dispatch as he left the extra-duty assignment that he was in route to his home and available for calls" in her motion for summary judgment. The county appeared to agree. In response to the widow's motion and also in its own motion for summary judgment, the county stated that it "agrees with the Undisputed Facts stated in Plaintiff's Motion for Summary Judgment, and depends upon the evidence attached to that Motion, incorporating it herein as though it were fully annexed hereto." That evidence included testimony elicited by the county from Chief Deputy Messick, which confirmed that Sergeant Orozco had indeed contacted dispatch after completing his extra-duty employment. That is what he was required to do under the sheriff's policies and procedures, all of which he was required to follow in connection with his extra-duty employment.

We therefore conclude that the authorized operation of his patrol car to and from the approved extra-duty assignment was a law-enforcement activity no different from similar travel during Sergeant Orozco's on-duty work for the county. We further conclude that this activity originated in the work of the El Paso County Sheriff's Department and was performed in furtherance of its and the county's affairs. Finally, we conclude that the coming-and-going rule applies to the travel at issue, but that exceptions to that rule apply as well so as not to exclude this travel from the statute's basic definition of course and scope. *See* TEX. LAB. CODE § 401.011(12)(A)(i-ii). And because the travel here is governed by the coming-and-going rule, it is not also subject to analysis under the dual-purpose rule. *Leordeanu*, 330 S.W.3d at 248.

\* \* \*

15

The judgment of the court of appeals is reversed and judgment rendered to reinstate the trial court's summary judgment in the widow's favor.

_____
John P. Devine
Justice

**OPINION DELIVERED**: March 20, 2020